DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment issued by the Ottawa County Common Pleas Court, Juvenile Division, continuing a temporary custody placement of a child with her maternal aunt. Because we conclude that the trial court did not err when it held a dispositional hearing more than 90 days after the dependency complaint was filed, and no undue influence was exerted over the appellant mother by her attorney at the dispositional hearing, we affirm.
 {¶ 2} The Ottawa County Department of Job and Family Services filed a dependency complaint in this case on August 7, 2002. A shelter care hearing was held the next day, and temporary custody of Jessica M.B. was awarded to her maternal aunt, in whose custody she still remains. The court appointed an attorney for the biological mother, Celeste B., because she was indigent. The biological father, Jeff K., also retained his own attorney, and the case was scheduled for an August 21, 2002 pre-trial.
 {¶ 3} A number of continuances were requested and granted before the April 25, 2003 adjudicatory hearing; however, none of these continuances were objected to by either parent. The dispositional hearing was initially set for May 19, 2003, and continued to June 2, 2003. A number of witnesses were called that day to testify about temporary custody placement and whether it should stay with the maternal aunt or be changed to another party. The hearing was continued further to June 9, 2003.
 {¶ 4} On June 9, 2003, an agreement was reached between the parties as to temporary custody. Jessica would continue to be in the custody of her maternal aunt, and a later hearing was scheduled to resolve the father's motion for legal custody. The parents agreed to visitation rights with Jessica, and Celeste would undergo counseling. All parties stated they understood and agreed to the terms of the agreement. The trial court's July 16, 2003 judgment entry reflected the agreement of the parties. Celeste now appeals from that entry.
 Assignments of Error
"1. The trial court denied appellant due process of law when it failed to observe the time requirements of sections 2151.28 and2151.35 of the Ohio Revised Code (ORC)"
"2. The trial court erred when it accepted appellant's consent to an agreement without conducting a thorough inquiry regarding appellant's state of mind on the day of hearing."
 First Assignment of Error {¶ 5} Celeste's first assignment of error argues that if a dispositional hearing in a temporary custody matter is held past 90 days after the filing of the complaint, it must be dismissed automatically. That contention is inaccurate.
 {¶ 6} Although R.C. 2151.28(B)(3)[1] and2151.35(B)(1)[2] state that a dispositional hearing should be held within 90 days of the filing of a complaint and R.C.2151.35(B)(1) calls for the dismissal of the complaint without prejudice if the hearing is not held within those 90 days, the time period may be waived when neither party has raised any objections to continuances of the dispositional hearing. In theMatter of Diamond H. (Aug. 15, 2000), Lucas App. No. L-99-1370. See also, In the Matter of Bailey D. (Apr. 17, 1998), Lucas App. No. L-96-363; In re: Jones (May 2, 2001), Summit App. No. 20306; In re Kutzli (1991), 71 Ohio App.3d 843, 845-846. Additionally, the power of the trial court in a juvenile proceeding to grant or deny a continuance under Juv.R. 23 is quite broad and is reviewed under an abuse of discretion standard. In the Matter of Rossantelli, 5th Dist No. 01CAF12072, 2002-Ohio-2525, at ¶ 25; In the Matter of DanielK., 6th Dist Nos. OT-02-025, OT-02-023, 2003-Ohio-1409, at ¶¶ 23-26.
 {¶ 7} Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, citing State v. Adams
(1980), 62 Ohio St.2d 151, 157. In order to satisfy that high standard, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256. Additionally, an appellate court should not substitute its judgment for the trial court's. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 8} Here, the trial court was acting well within its sound discretion when it chose to grant or deny continuances in this matter. Furthermore, any objections the parties may have had were waived when objections were not registered at the proper time. If Celeste
 {¶ 9} wished to object to the dispositional hearings being held more than 90 days after the complaint was filed in this matter, she needed to file a motion to dismiss at the proper time. Her failure to object to the motions to continue waived her ability on appeal to argue that R.C. 2151.28(B)(3) and2151.35(B)(1) were violated. Celeste's first assignment of error, therefore, is found not well-taken.
 Second Assignment of Error {¶ 10} Celeste argues in her second assignment of error that she was under undue influence from her attorney when she agreed that Jessica would continue to be in the custody of her maternal aunt, and that Jeff's motion for legal custody would be heard later while Jeff would have visitation rights and she underwent counseling.
 {¶ 11} Undue influence has been defined as "any improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely." Marich v. Knox Cty. Dept. of Human Serv. (1989),45 Ohio St.3d 163, 166.
 {¶ 12} Undue influence requires certain elements: "(1) a susceptible party, (2) another's opportunity to influence the susceptible party, (3) the actual or attempted imposition of improper influence, and (4) a result showing the effect of the improper influence." DiPietro v. DiPietro (1983),10 Ohio App.3d 44, 46. This analysis has been used when the issue is a review of an attorney's actions surrounding a custody agreement. See, In re: A.I., 8th Dist. No. 83167, 2004-Ohio-239, at ¶¶ 17-19.
 {¶ 13} A thorough review of the record, especially the June 9, 2003 dispositional hearing, shows that Celeste entered into the agreement by her own free will. At the hearing, the following interchange occurred between Celeste and her attorney:
Cottrell: "Celeste, you have been in Court today. You heard me read into the record the conversation and discussion we had prior to coming into Court, and then you heard me read into the record the agreement which was amended in part by or clarified in part by Mr. Mulligan and by Mr. Sandwisch. Did you hear that? Did you hear what I said?
Celeste: "Yes, I did
Cottrell: "Did you hear what Mr. Mulligan said?
Celeste: "Yes
Cottrell: "Did you hear what Mr. Sandwisch said?
Celeste: "I am not sure I remember what he said. Could you repeat it?
Cottrell: "Regarding the clarification regarding visitation, and he indicated that he would be, that visitation would continue with dad as per what agreement can be reached between the present custodian and himself. Do you understand that?
Celeste: "I understand that.
Cottrell: "Is there any part of the agreement that you do not understand?
Celeste: "Not at this point, no.
Cottrell: "Is there any part — is there any part of the agreement that you do not agree with?
Celeste: "I don't agree with the father getting temporary — getting to work out visitation with the custodian, legal custodian, because he has only been involved in her life for two months.
Cottrell: "Stop. You heard the agreement?
Celeste: "I heard the agreement.
Cottrell: "Are you willing to abide by this agreement?
Celeste: "I am willing to abide by it.
Cottrell: "Okay. Are you satisfied with the services of counsel up to this point?
Celeste: "Yes.
"* * *
Cottrell: "No one has forced you to enter into this agreement, have they?
Celeste: "No.
Cottrell: "You are doing this of your own free will?
Celeste: "I am doing it. Yes. Yes."
 {¶ 14} Nothing in the above exchange suggests that Celeste was being unduly influenced by her attorney. To the contrary, Celeste's attorney stopped and made certain that she wanted to enter into the agreement. Celeste herself testified that she had freely entered into the agreement and was not being forced.
 {¶ 15} Celeste has not shown any of the four elements of undue influence. Even if we were to assume that at the hearing she was a "susceptible party" merely by being the child's mother, and further assume that her attorney might have had the "opportunity" to influence her, there is no evidence of improper influence and adverse result. The result of the agreement was the daughter's continued custody with Celeste's sister, visitation by both parents, required counseling for Celeste, and a future hearing on the father's motion for legal custody. These consequences do not show the effect of any undue influence. The second assignment of error, therefore, is found not well-taken.
 {¶ 16} Since substantial justice was done to appellant, the judgment of the Ottawa County Court of Common Pleas, Juvenile Division is affirmed. Appellant is ordered to pay the court costs of this appeal.
Judgment Affirmed.
Handwork, P.J., and Knepper, J., concur.
[1] R.C. 2151.28(B)(3) states in pertinent part:
"[I]n no case shall the dispositional hearing be held later than ninety days after the date on which the complaint was filed."
[2] R.C. 2151.35(B)(1) states in pertinent part:
"The dispositional hearing shall not be held more that ninety days after the date on which the complaint in the case was filed.
"If the dispositional hearing is not held within the period of time required by the division, the court, on its own motion or the motion of any party or guardian ad litem of the child, shall dismiss the complaint without prejudice."